Melissa Gaye TROSPER,
Plaintiff/Appellant.

v.

TOWN OF ONEIDA,
Defendant/Appellee.

Supreme Court of Tennessee,
at Knoxville.

Aug. 7, 1989.

David H. Dunaway, LaFollette, for plaintiff-appellant.

Pamela L. Reeves, Knoxville, for defendant-appellee.

## OPINION

FONES, Justice.

In this Workers' Compensation case the plaintiff-employee appeals the denial of benefits based upon two separate claims. The trial court found that plaintiff failed to satisfy the statutory requirement of notice to the employer of the 7 March 1987 injury pursuant to T.C.A. § 50–6–201. The trial court determined that plaintiff failed to prove a causal connection between her emotional and mental injuries sustained and her allegations of sexual harassment while employed for the town of Oneida. We agree.

At time of trial plaintiff-appellant, Melissa Gaye Trosper, was a twenty-two-year-old female with a high school education. Plaintiff's past work experiences consisted of employment as a dental assistant, a cashier at a fast food restaurant, and a lifeguard. In 1985 plaintiff started working part-time as a dispatcher for the Police Department for the town of Oneida, in which her uncle was the mayor. Plaintiff continued to be employed as a dispatcher until the fall of 1987.

Plaintiff avers that on 7 March 1987 during the course and scope of her employment she injured her back while moving a desk. The determinative issue surrounding the March incident was whether the notice requirement of T.C.A. § 50–6–201 was satisfied. T.C.A. § 50–6–201 provides:

Every injured employee or his representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has not actual notice, written notice of the injury, ... and no compensation shall

be payable under the provisions of this chapter unless such written notice is given the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

Plaintiff testified on direct examination that on 7 March, while in the course and scope of employment:

The mayor came in and was going to buff the back floor in the dispatcher's room, and he asked me to move the dispatcher's desk.

Q. What did you do?

A. I had to scoot it. I couldn't pick it up. I had to scoot it over out of the way.

Q. What happened?

A. I pulled my back. I felt a burning in my back, and I told the mayor.

Q. What did you tell the mayor?

A. That I hurt my back. And he said that I was big enough, I could move it. And then he wanted me to move it back when he got finished. And I wouldn't move it, so he made J.C. Lawson move it back.

Plaintiff testified that within a week from said injury she visited Dr. Huff regarding her back and related to him the manner in which her back injury occurred. However, Dr. Huff was not called to testify at trial or by deposition, nor was J.C. Lawson.

In contrast, the Mayor of Oneida testified that he did not recall requesting plaintiff to move the dispatcher's desk. Further, he denied the plaintiff had ever reported to him that she had sustained a back injury as a result of moving the desk. The first notice that he ever received of an alleged on-the-job back injury was in a letter dated 21 December 1987, which he received from the plaintiff's attorney.

Plaintiff's immediate supervisor, Chief of Police MacArthur Burchfield testified by deposition that, "I don't remember where I heard it [plaintiff's back injury]. One had mentioned it. I heard after, just shortly after, they [mayor and city recorder] had [been] told that there was a claim or some-

thing for back injury." He stated the first time that he remembered Melissa complaining of her back was after a car accident in April of 1987:

Q. But as far as the details of her back being hurt or her making any statements to you about how she hurt her back; you just don't know?

A. No sir.

The city recorder for the Town of Oneida, Betty P. Matthews, testified as to the routine procedure for handling work related injuries; the supervisor in the department fills out a first report of injury and brings it to her and she forwards it to their insurance carrier. Further, she testified that plaintiff had not told her anything about a back injury sustained in March of 1987. On direct examination she testified:

Q. Did she [plaintiff] ever come to you at anytime and report that she had injured her back on the job?

A. No.

. . . . .

Q. When was the first notice that the Town of Oneida had regarding a claim for an on-the-job back injury?

A. When we were served [with the workers' compensation lawsuit].

. . . . .

Q. What did you do after you were served with the lawsuit?

A. I filled out a first report of injury.

The first report of injury was dated 30 December 1987. The trial judge found as a fact that:

The Mayor has testified directly that she did not report any injury to him, that he did not see an injury, and his testimony is supported by two reports filed subsequent to that that were marked "not work related."

The plaintiff testified that it was her signature on the form which had to be filled out through the admissions office of the emergency room for physical therapy. This form was dated 3/20/87 and the answer "no" was checked in response to whether injury was employment related. Upon cross examination plaintiff testified

that even though she signed the form she had not read it. In addition, plaintiff testified that it was her signature on the form that the city recorder and she filled out to submit to the insurance carrier for payment of physical therapy treatment. The box "no" was marked in reference to whether condition was related to patient's employment.

This Court is of the opinion that the evidence does not preponderate against the trial judge's ruling. The only testimony of actual notice to the employer was that of plaintiff who testified that she told the mayor that she had hurt her back. The mayor's testimony directly contradicted her and his testimony was corroborated by the forms signed by plaintiff. The trial judge obviously accepted the mayor's testimony and rejected plaintiff's.

■ The plaintiff argues that she was not required to give the employer notice of her back injury until such time that she was aware that she had sustained a compensable work injury. Plaintiff contends that once she had received medical advice from her attending physician, Dr. Bruce Coffey, that she had sustained a compensable injury, she immediately gave written notice to the employer. Dr. Coffey testified by deposition that he initially saw plaintiff on 17 November 1987 with regard to her emotional disturbances. The first time Dr. Coffey learned of plaintiff's back problem was on 18 January 1988. A CAT scan was performed by Dr. Hall at the request of Dr. Coffey on 28 January 1988 which reported "some anterior central density is noted at L5 S1 but this may represent some diffuse bulging of the disc."

It is plaintiff's contention that she did not learn of any disability as far as her back was concerned until after she received the results of the CAT scan. However, this contention is completely and unequivocally contradicted by the facts of this case. On 21 December 1987, approximately 38 days *before* the CAT scan was performed, plaintiff's attorney sent a letter to the mayor wherein he notified the Town of Oneida of plaintiff's claim for workers' compensation regarding a work related injury occurring on 7 March 1987. Thus, it is clear from the letter sent by plaintiff's own counsel that plaintiff was aware of her work related disability arising from the alleged back injury before she received the results of her CAT scan. In fact, plaintiff's complaint was filed on 28 December 1987, one month before the scan was performed and approximately 3 weeks before plaintiff's first mention to Dr. Coffey of her back problem.

Plaintiff has attempted without avail to state a "reasonable excuse for failure to give such [written] notice." Plaintiff has failed to satisfy the statutory requirement of notice to the employer of the 7 March injury.

■ In plaintiff's second claim for workers' compensation benefits she alleged in the complaint that beginning in the spring of 1987 and continuing into the fall of the same year, while in the course and scope of her employment as dispatcher, "various physical assaults were committed upon the plaintiff" and "the plaintiff was subjected to various demands and pressures by various employees of the defendant causing plaintiff to sustain various emotional injuries and mental injuries." Plaintiff further alleged that she was subject to "a series of various assaults and verbal abuse by which various employees of the defendant physically grabbed the plaintiff, made physical assaults on the plaintiff, and otherwise exposed the plaintiff to such an environment that the plaintiff sustained emotional, mental injuries and/or a mental occupational disease."

At trial plaintiff testified about numerous incidents of sexual remarks and offensive conduct on the part of various male employees of the Oneida Police Department. The plaintiff testified to one specific incident of physical assault wherein a police officer allegedly slapped the plaintiff across the face when she told him to "shut up" talking "nasty." She also testified to specific incidents wherein her legs and breast had been grabbed and an officer had kissed her neck.

Plaintiff testified that no one at the police department had bothered her until af-

ter her divorce in December 1986. She met Bobby Adkins at a Christmas party and in January 1987 he moved in with her.

Her parents and the mayor, who is her mother's brother, found out about Adkins moving in with her and disapproved. She admitted on cross-examination that the mayor told her, in January 1987, that she could not continue to work at the police department unless she evicted Adkins or married him. A city election was held in November 1987, and her uncle was reelected. She admitted that at least twice between January and November the mayor repeated the admonition that she could not continue to work for the police department unless she married or evicted Adkins. She was well aware that the mayor had the authority to hire or fire all of the officers and employees of the police department. Her job at the police department was part-time. She also worked four days a week as a dental assistant. As election time approached she had discussions with the chief of police and her uncle about a full-time job. She testified that the chief of police told her in November 1987 that she could have a full-time job and she gave the dentist she worked for two weeks notice that she was quitting.

At the end of the two weeks she called the mayor to get her full-time work schedule at the police department. He told her she did not have a job at the police department and said, "I told you that you could not live with that man and have that job." She worked that weekend, but then she was told by the mayor and the chief that she could not work at the police department until she married or terminated the relationship with Adkins.

However, a short time after being "fired", she received a letter dated 7 December 1987 offering her a job at the police department with no mention of a condition. She responded by letter dated 11 December 1987, rejecting the job offer. On 12 December 1987 she married Bobby Adkins,

not because she loved him but because she wanted to please the mayor.

The day following her marriage she went to the hospital with a nervous breakdown. On 28 December 1987 this lawsuit was filed.

At the conclusion of plaintiff's proof defendant moved for a directed verdict.[1] After hearing oral argument the trial judge recessed to read the medical depositions. Thereafter, the trial judge directed that defendant's proof be confined to the issue of notice of the back injury. Defendant put on several witnesses including the mayor and the trial judge allowed plaintiff's counsel to cross-examine him about plaintiff's sexual harassment claim in spite of the announced limitation.

At the conclusion of the proof the trial judge rendered an oral opinion from the bench that was transcribed and incorporated by reference in the final order dismissing the case. After disposing of the back injury claim unfavorably to plaintiff for failure to comply with the notice requirements of the Act, the court, by implication, granted defendant's motion to dismiss the sexual harassment claim. The trial judge recognized that in doing so he was required to take the strongest legitimate view of the evidence in favor of plaintiff, and deny the motion unless he could conclude that as a matter of law plaintiff had not proven entitlement to worker's compensation benefits. Although there is considerable ambiguity in the four of five pages of the trial judge's ruling on this issue, we find the essence of it to be in the following quote:

And if anything was said, I think it was said more in a joking manner than she took it. And I think she's more sensitive, perhaps, than normal, and at the same time she was having many other problems, and the problems that I keep seeing coming up in the medical and other places is this unfortunate circumstance she had with Mr. Adkins that the Mayor put the pressure on her to marry him, get rid of him, or get fired, and that

---

1. The proper motion in a non-jury case is a motion to dismiss for failure to prove a right to relief, pursuant to T.R.C.P. 41.02(2).

bothered her. She didn't want to marry him. She didn't want to get rid of him, and she certainly didn't want to get fired. She didn't get rid of him, and she hadn't married him, and she was not re-employed. I think that's the proximate cause of most of her difficulty. She subsequently married him, and I have no way of knowing, that may be a good decision, it may not be. But unfortunately, this young lady has apparently made several bad decisions, and they've upset her ... but legally, there's no need in me keeping everybody here all afternoon, hearing these officers and others testify that—and even if they admit misconduct, this does not rise to the station of a workman's compensation claim, because it's my opinion that most of her difficulty came from being terminated as a result of the marital situation.

Our review of this record also leads us to the conclusion that plaintiff's emotional problems were the direct result of her live-in relationship with a man she met approximately one month after her divorce, and was living with one month later without benefit of matrimony. The record describes the town of Oneida as small, where everyone knew the mayor and inferentially everyone knew within a short time that the mayor's niece who had been provided some type of employment with the city for years was living in a relationship that did not conform to the mores of that community.

Having determined that plaintiff failed as a matter of law to establish sexual harassment as the cause of her emotional problems we find it unnecessary to address the issue of whether sexual harassment meets the test of arising out of and in the course of her employment with the City of Oneida.

The judgment of the trial court is affirmed. Costs are adjudged against plaintiff.

DROWOTA, C.J., and COOPER, HARBISON, O'BRIEN, JJ.